IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**T. WALLACE, JR.**                                                                                           **PLAINTIFF**

**v.**                                                             **CIVIL ACTION NO. 2:24-cv-00100-KS-LGI**

**COMMISSIONER OF SOCIAL SECURITY**                                             **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff appeals the final decision denying his application for disability benefits. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully analyzed the entire record, including the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

Plaintiff filed a disability application alleging he became disabled on March 12, 2016, due to Asperger's syndrome, ADHD, anxiety, and obesity. He was 23 years old on his alleged onset date, with no past relevant work experience and two years of college. Following agency denials of his application, an ALJ issued a decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, and he now appeals that decision.

The evidence, detailed in the ALJ's decision, will not be repeated in depth here. Plaintiff asserts that despite attempts to work on several occasions between 2013-2016, his impairments have prevented him from obtaining substantial gainful activity. At both

his initial and supplemental administrative hearings, Plaintiff testified that he lives next door to his grandmother, whom he checks on and accompanies to the doctor. He is able to attend to his own needs and those of his animals; he also cooks, drives, shops, plays video games and reads in his spare time. With accommodations, Plaintiff has obtained a horticulture degree, but his mother testified that he has been unable to find work in that field. She also noted that he lost a part-time janitorial job because he had difficulty following directions and doing things in a timely manner. Plaintiff acknowledged that he also has trouble communicating, but he denied having problems getting along with coworkers.

    After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish that Plaintiff was precluded from all work activity. At step one of the five-step sequential evaluation,[1] the ALJ found Plaintiff had not engaged in substantial gainful activity from his alleged onset date, March 12, 2016, through his date of last insured, December 31, 2018. At steps two and three, the ALJ found that although Plaintiff's ADHD, Asperger's syndrome, anxiety, and obesity were severe, they did not meet or medically equal a listing. At steps four and five, the ALJ found that Plaintiff had the residual functional capacity to work with the following nonexertional limitations: "the claimant can understand, remember, and carry

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

out short simple instructions; can concentrate, persist, and maintain pace in order to perform simple, routine, repetitive tasks; can occasionally interact with supervisors, coworkers, and the general public; and can adapt to routine changes in the workplace."

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a general laborer, hand packager, and electronics worker.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision satisfies relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). As the United States Supreme Court reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). On judicial review, this Court may not re-weigh the evidence, try the case de novo, or

substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

As his sole assignment of error, Plaintiff alleges the ALJ failed to properly evaluate the medical opinion of the consulting mental health examiner, Dr. Jan Boggs. The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with applicable standards. Given the record before her, the undersigned submits there is no basis for reversal or remand.

Social security regulations were revised in recent years so that supportability and consistency of medical opinions are the most important factors in assessing opinion evidence, and ALJs may, but are no longer required to, explain how they considered other factors. 20 C.F.R. § 404.1520c(b). The regulations set forth certain "articulation requirements" specifically requiring the ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [the claimant's] determination or decision." § 404.1520c(b)(2). But it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (citation omitted). That is what occurred here.

Upon observing that Plaintiff was not undergoing any current mental health treatment, the ALJ ordered a consultative mental status examination following the first administrative hearing. During the examination, Plaintiff reported that he had a problem "keeping a steady job," having left one "because he was not needed" and another because

he "didn't do how they wanted." Consistent with his testimony, Plaintiff reported that his daily activities included, among other things, preparing food for himself, household chores, yardwork, caring for his animals, reading and playing video games. He also advised that he didn't go many places or socialize much, but attends church, visits with family, and goes to stores. And while he gets nervous at times, he has "a knack for keeping himself calm" when "it would be easy to act out."

Based on his examination, Dr. Boggs diagnosed Plaintiff with ADHD, moderate generalized anxiety disorder, and provisional autistic spectrum disorder, with the latter being the "least eminent" of the three. Dr. Boggs noted that Plaintiff's communication suggested low to average intelligence, but he could adequately perform daily problem-solving situations. He observed that Plaintiff does get "uptight around people that he doesn't know" and lacked the "adequate" level of social skills that would allow him to "ingratiate himself to many people on the job, including coworkers and supervisors." Plaintiff also did not "have much confidence in his ability to perform" and "would probably benefit from counseling geared to self-esteem and being able to relax a little more in novel or trying situations." But based on his findings, Dr. Boggs concluded that Plaintiff was only moderately limited in all four areas of mental functioning, including his ability to interact with others—a finding that Plaintiff does not challenge on appeal.

In evaluating the medical opinion evidence, the ALJ explained that unlike the state agency psychological consultants who assigned only mild limitations, Dr. Boggs had the benefit of evidence submitted though the hearing level. His opinions were persuasive because they were "consistent with and supported by his own examination of the

claimant" as well as hearing testimony from both the Plaintiff and his mother at the first and second administrative hearings. Such testimonial evidence, the ALJ explained, included the fact that Plaintiff had social limitations; problems following multi-step directions; completing tasks in a timely manner; explaining problems or issues to his employer; and, interacting with anyone outside of his family. Even within the family, Plaintiff's manner of addressing others had been a problem. For these reasons, the ALJ explained, she found Dr. Boggs's opinion most persuasive.

Still, Plaintiff asserts that the ALJ failed to "sufficiently explain her rationale" for finding Dr. Boggs's opinion persuasive "while simultaneously failing to incorporate" his examination findings into her residual functional capacity determination. Specifically, Plaintiff points to Dr. Boggs's statement that "his social skills are not adequate to ingratiate himself to many people on the job, including coworkers and supervisors." Had the ALJ incorporated this finding, Plaintiff posits that the resulting residual functional capacity determination would have limited him to no interaction with others, not occasional interaction.

As a threshold matter, the ALJ's decision details Dr. Boggs's examination at length. In doing so, her decision makes clear that she considered it persuasive because, unlike the other medical opinions of record, it was consistent with all the evidence, including Plaintiff's subjective complaints. Moreover, contrary to what Plaintiff argues, in evaluating the severity of Plaintiff's mental impairments at step two, the ALJ adopted the limitations assigned by Dr. Boggs, who found Plaintiff moderately limited in all four areas of mental functioning, including social functioning. An ALJ need not follow

"formalistic rules in his articulation." *Hernandez v. Astrue*, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)). It is evident from her decision that she engaged in the requisite analysis sufficient to allow meaningful judicial review.

But even if the Court were to find the ALJ erred as Plaintiff argues, he "misunderstands [his] burden here." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773 (5th Cir. Jan. 18, 2023), at *3. He fails to show that if the ALJ had given Dr. Boggs's opinion "further explanation, then she would have adopted' [Plaintiff's] line of thinking and altered [the] outcome." *Walker v. Kijakazi*, No. 23-60116, 2023 WL 7443302, at *4 (5th Cir. Nov. 9, 2023). Plaintiff, that is, may well lack the social skills to ingratiate himself to others, but Dr. Boggs found that his ability to interact with others was moderately limited, not that he was unable to do so.

Social Security regulations use a five-point scale to rate the degree of limitations in mental functioning: none, mild, moderate, marked, and extreme. If a limitation is rated "none: or "mild" it is generally considered not severe unless the evidence indicates otherwise, while "[t]he last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a. An extreme limitation in social functioning, for example, is a complete inability to independently, appropriately, or effectively interact with others on a sustained basis. By comparison, a marked limitation is a "seriously limited ability" to function independently, appropriately, or effectively on a sustained basis.

Notwithstanding, courts have held that a residual functional capacity determination allowing for occasional interactions with others adequately accounts for a marked limitation in social functioning. *See, e.g.*, *Bodine v. Saul*, No. 7:20-CV-00044-O-BP, 2021 WL 1941696, at *5 (N.D. Tex. Feb. 16, 2021), *report and recommendation adopted,* No. 7:20-CV-00044-O-BP, 2021 WL 1326563 (N.D. Tex. Apr. 8, 2021) (finding no error in the ALJ's finding that occasional interaction with coworkers adequately accounts for a marked, rather than moderate limitation). Relevant here, courts have similarly held that a residual functional capacity limitation allowing for occasional interaction with others adequately accounts for ***moderate limitations*** in social functioning. *Zul v. Kijakazi*, No. 20-35404, 2021 WL 5298595 (9th Cir. Nov. 15, 2021), at *1 (the ALJ adequately accounted for a doctor's opinion about the claimant's "moderate" social limitations by limiting him to occasional coworker interaction). *Wofford v. Comm'r of Soc. Sec.*, No. 2:19-CV-0792-WBS-DMC, 2021 WL 765262, at *7 (E.D. Cal. Feb. 26, 2021), *report and recommendation adopted sub nom. Wofford v. Comm'r Soc. Sec.*, No. 2:19-CV-0792 WBS DMC, 2021 WL 1517878 (E.D. Cal. Apr. 16, 2021) ("a limitation to occasional interaction with co-workers" in plaintiff's RFC adequately encompassed the earlier finding that the plaintiff was "moderately limited in various social interactions"); *Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (finding that the plaintiff's "moderate difficulty with social functioning encompassed by the limitation of 'occasional contact' with coworkers [and] supervisors").

Plaintiff does not cite any contrary authority. Nor does he challenge Dr. Boggs's underlying findings on appeal. Rather, Plaintiff essentially asks us to reweigh the

evidence -- which we cannot do. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Substantial evidence supports the ALJ's findings.

To arrive at Plaintiff's residual functional capacity, the ALJ considered the entire record, not just Dr. Boggs's assessment. Consistent with the moderate limitations that Dr. Boggs's assigned, the ALJ found Plaintiff's "alleged limitations were not supported to the degree described." As she observed:

> The claimant's mother reported he had social limitations; however, she also indicated the claimant was able to go out alone, did his own shopping, and spent time with others in person. He attended church, checked on his grandparent(s), and got along fine with authority figures. The claimant also accompanied his grandmother to doctor appointments. The claimant initially reported he spent time with his grandmother on a daily basis, and denied having any difficulty getting along with others while shopping. . . . . He also indicated that family members complained about his manner of speaking to them but denied any problems getting along with his coworkers and supervisors.

It is well-settled that when a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility, and his findings are entitled to considerable deference. *Britton v. Saul*, 827 F. App'x 426, 431 (5th Cir. 2020); *Foster v. Astrue*, 277 F. App'x 462, 465–66 (5th Cir. 2008).

Further, when compliant, Plaintiff's medications were effective in managing his symptoms. Yet, as the ALJ noted, he did not pursue ongoing medical care. A claimant's failure to seek treatment is a relevant factor to consider in determining the severity of an impairment and may be used in conjunction with the claimant's daily activities and medical reports to discount complaints of disabling limitations. *Doss v. Barnhart*, 137 F.

App'x 689, 690 (5th Cir. 2005); *Anthony*, 954 F.2d at 295; *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *LeBlanc v. Chater*, 83 F.3d 419 (5th Cir. 1996) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).

In sum, the ALJ's decision does not show that she failed to explain or reconcile Plaintiff's limitations in social functioning in determining his residual functional capacity; rather, it shows that she fulfilled her role as the finder of fact to weigh the evidence and to make an administrative assessment of his ability to work. Plaintiff's disagreement with the ALJ's formulation of the residual functional capacity does not carry the burden of establishing that substantial evidence does not support the ALJ's determination. The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that he did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

## Conclusion

Based on consideration of the evidentiary record, the ALJ determined that Plaintiff failed to establish that his impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a recommendation that the ALJ applied the correct legal standards, and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, will bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 18, 2025.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE